Christopher J. Moser, Esq.
John Paul Stanford, Esq.
S. Kyle Woodard, Esq.
**QUILLING, SELANDER, LOWNDS,**
**WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
cmoser@qslwm.com (Email)
jstanford@qslwm.com (Email)
kwoodard@qslwm.com (Email)

*Attorneys for Chapter 11 Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-30166 |
| | § | |
| SHOE SHIELDS LLC, et al. | § | CHAPTER 11 |
| | § | |
| DEBTOR | § | Jointly Administered |

**SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
COMBINED WITH DISCLOSURE STATEMENT**

DATED: May 16, 2019

**Table of Contents**

Article I.      INTRODUCTION ............................................................................ 3

Article II.     DEFINITIONS................................................................................. 3

Article III.    VOTING ON THE PLAN AND OBJECTIONS................................. 8
    3.01    Disclosure Statement Order ............................................ 8
    3.02    Who May Vote.................................................................. 8
    3.03    How to Vote..................................................................... 9
    3.04    Effect of Vote.................................................................. 9
    3.05    Who May Object............................................................... 9

Article IV.     DISCLOSURE STATEMENT ....................................................... 9
    4.01    Background of the Debtor and Events Leading to Bankruptcy ............................. 9

| | | |
|---|---|---|
| 4.02 | Significant Events Since the Petition Date | 11 |
| 4.03 | Assets of the Debtor | 12 |
| 4.04 | Liabilities of the Debtors | 13 |
| 4.05 | Tax Consequences of the Plan | 15 |

Article V.     LIQUIDATION ANALYSIS ... 16

Article VI.     PLAN OF REORGANIZATION ... 17
| | | |
|---|---|---|
| 6.01 | Classification of Claims and Interests | 17 |
| 6.02 | Claims and Interests Impaired Under the Plan | 17 |
| 6.03 | Treatment of Unclassified Claims, Administrative Expense Claims, Priority Claims, and U.S. Trustee Fees | 17 |
| 6.04 | Treatment of Classified Claims and Interests Under the Plan | 19 |
| 6.05 | Implementation of the Plan | 20 |
| 6.06 | Feasibility of the Plan | 22 |
| 6.07 | Provisions Regarding Distributions and Objections to Claims | 23 |
| 6.08 | Executory Contracts | 24 |
| 6.09 | Default | 25 |

Article VII.     RESERVATION OF CLAIMS ... 25
| | | |
|---|---|---|
| 7.01 | Reservation of Claims and Causes of Action | 25 |
| 7.02 | Return of Fraudulent Transfers | 26 |

Article VIII.     EFFECT OF CONFIRMATION, DISCHARGE, RELEASES AND INJUNCTION ... 26
| | | |
|---|---|---|
| 8.01 | Vesting of Property | 26 |
| 8.02 | Plan Creates New Obligations | 27 |
| 8.03 | Legal Binding Effect | 27 |
| 8.04 | Discharge | 27 |
| 8.05 | Satisfaction of Claims and Interests | 27 |
| 8.06 | Temporary Injunction | 27 |
| 8.07 | Modification of the Plan | 28 |
| 8.08 | Retention of Jurisdiction | 28 |

Article IX.     MISCELLANEOUS PROVISIONS ... 29
| | | |
|---|---|---|
| 9.01 | Request for Relief Under Bankruptcy Code § 1129(b) | 29 |
| 9.02 | Headings | 29 |
| 9.03 | Due Authorization | 29 |
| 9.04 | Further Assurances and Authorizations | 30 |
| 9.05 | Applicable Law | 30 |
| 9.06 | No Interest | 30 |
| 9.07 | Post-Confirmation Actions | 30 |
| 9.08 | Notices of Default | 30 |
| 9.09 | Notices | 30 |
| 9.10 | Payment Dates | 31 |
| 9.11 | DeMinimis Distribution | 31 |

## Article I. INTRODUCTION

On January 17, 2019, Shoe Shields LLC (hereinafter, the "**Debtor**") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. The Debtor's bankruptcy case is a "small business case" pursuant to § 101(51C) of the Bankruptcy Code. This *Second Amended Chapter 11 Plan of Reorganization Combined with Disclosure Statement* is provided pursuant to Bankruptcy Code § 1125 to all of the Debtor's known creditors and other parties in interest in connection with the solicitation of votes on the Debtor's plan of reorganization. The details of the Plan itself are set out in Article VI of this document. **This Plan proposes to pay all Allowed Claims in full plus interest at four percent (4%) per annum**.

The purpose of the disclosures contained in Articles I through V of this document are to provide you with such information as will enable a hypothetical and reasonable investor, typical of the holders of Claims against the Debtor, to make an informed judgment in exercising his, her, or its right to either accept or reject the Plan. If you are entitled to vote on the Plan, you will be provided with a ballot which you may use to vote your acceptance or rejection of the Plan. That ballot should be completed and returned to the Debtor's attorney so as to be received prior to the stated deadline. The enclosed Disclosure Statement Order sets forth the deadlines for voting on or objecting to Confirmation of the Plan and notice of the Confirmation Hearing. While you are invited to attend the Confirmation Hearing, you need not be present in order to have your vote counted.

Your acceptance of the Plan is important. In order for the Plan to be deemed "accepted" by the creditors in any given Impaired Class, at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims and fifty-one percent (51%) in number of Allowed Claims voting in that Class must accept the Plan. Whether or not you expect to be present at the Confirmation Hearing, you are urged to fill in, date, sign, and properly mail or email the acceptance form to the Debtor's attorneys, Quilling, Selander, Lownds, Winslett & Moser, P.C., Attn: S. Kyle Woodard, 2001 Bryan Street, Suite 1800, Dallas, Texas 75201; or email: kwoodard@qslwm.com. In the event that the requisite acceptances are not obtained, the Plan may nevertheless be confirmed by the Bankruptcy Court pursuant to the provisions of Bankruptcy Code § 1129. Those provisions may permit Confirmation, notwithstanding a rejecting Class or Classes, if the Bankruptcy Court finds that the Plan provides fair and equitable treatment to the rejecting Class or Classes in addition to satisfying other criteria.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

## Article II. DEFINITIONS

Except as expressly provided herein or unless the context otherwise requires, the terms set forth in this Article II shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form that is not defined herein, but that is defined in

the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

2.01 "**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, Fee Claims.

2.02 "**Allowed Amount**" means the amount of any Allowed Claim.

2.03 "**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

2.04 "**Assets**" means property of the Estate.

2.05 "**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

2.06 "**Bankruptcy Case**" or "**Case**" means this bankruptcy case: Case No. 19-30166-bjh11 styled as *In re Shoe Shields LLC* pending before the Bankruptcy Court.

2.07 "**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

2.08 "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

2.09 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

2.10 "**Bar Date**" means May 20, 2019, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

2.11 "**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

2.12    "**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

2.13    "**Claimant**" or "**Creditor**" means the holder of a Claim or interest in Assets.

2.14    "**Class**" means any class into which Claims are classified pursuant to Section 6.01 of the Plan. Each subclass of a class shall be treated as a separate class.

2.15    "**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order.

2.16    "**Confirmation Date**" means the date on which the Order confirming this Plan is entered.

2.17    "**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtors will seek Confirmation of this Plan.

2.18    "**Confirmation Order**" means the Order confirming this Plan.

2.19    "**Contested**" when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

2.20    "**Daswani**" means Ram Daswani, an individual who signed the Asset Purchase Agreement on behalf of Shoe Shields, LLC.

2.21    "**Debtor**" means Shoe Shields, LLC, the Debtor herein. Where the context so requires, "**Debtor**" shall also include the Reorganized Debtor.

2.22    "**Disclosure Statement Order**" means the Order of the Bankruptcy Court approving or conditionally approving the disclosures contained in the *First Amended Chapter 11 Plan of Reorganization Combined with Disclosure Statement* as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical reasonable investor, typical of the solicited holders of Claims against the Debtor, to make an informed judgment with respect to the acceptance or rejection of the Plan.

2.23    "**Disputed**" with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor's bankruptcy schedules as "disputed, contingent or unliquidated" and for which such Creditor or Interest holder has not filed a Proof of Claim.

2.24    "**Effective Date**" means the thirtieth (30th) day after the Confirmation Date, or such other date as defined in the Confirmation Order.

**2.25** "**Estate**" means the bankruptcy estate of the Debtor in this Case.

**2.26** "**Fee Claim**" means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

**2.27** "**Fee Application**" means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

**2.28** "**Final Order**" means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

**2.29** "**Impaired**" means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

**2.30** "**Insider**" has the meaning provided by § 101(31) of the Bankruptcy Code. As used herein, the term Insider includes, but is not limited to the following: Siragusa, Rajpal, SR Squared and Daswani.

**2.31** "**Interest**" means any equity or ownership interest in the Debtor.

**2.32** "**JWCS**" means Jeff Wright Consulting Services, LLC, 10935 Estate Lane, Suite 432, Dallas, Texas 75238, the duly employed accountants for the Estate.

**2.33** "**License Agreement**" means that Patent and Trademark License Agreement dated May 1, 2017 between OSR as licensor and the Debtor as the licensee and all other licensing agreements between the parties relating to intellectual property, web sites and the production, manufacturing and sale of sneaker shields and wearable shoe trees.

**2.34** "**Lien**" means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and property tax lien.

**2.35** "**Order**" means an Order of the Bankruptcy Court.

2.36 "**OSR**" means OSR Patent LLC, the debtor in the OSR Bankruptcy Case. OSR and the Debtor have common ownership.

2.37 "**OSR Bankruptcy Case**" or "**OSR Case**" means Bankruptcy Case No. 19-30180 pending in the Bankruptcy Court and jointly administered with the Bankruptcy Case.

2.38 "**PayPal**" means and refers to PayPal Working Capital by WebBank, PO Box 5018, Timonium, Maryland 21094, the holder of a Secured Claim against the Debtor.

2.39 "**Petition Date**" means January 17, 2019, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

2.40 "**Plan**" means this *Second Amended Chapter 11 Plan of Reorganization Combined with Disclosure Statement*, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

2.41 "**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

2.42 "**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

2.43 "**Purchase Agreement**" means and refers to the Asset Purchase Agreement dated on or around September 6, 2016 between Wearable Shoe Tree LLC, Box Fresh LLC and Siragusa, as Sellers and Shoe Shields LLC, as Buyer, including any attachments, exhibits, or amendments thereto, wherein all the assets necessary to the operations of manufacturing and selling wearable shoe trees was sold to Shoe Shields LLC.

2.44 "**QSLWM**" refers to the law firm of Quilling, Selander, Lownds, Winslett, & Moser, P.C., 2001 Bryan Street, Suite 1800, Dallas, Texas 75201, the duly employed attorneys for the Trustee.

2.45 "**Rajpal**" means and refers to Jitendra Rajpal a/k/a Jay Rajpal.

2.46 "**Reorganized Debtor**" means the Debtor immediately following Confirmation, as reorganized in accordance with the Plan.

2.47 "**Schedules and Statements**" means and refers to the Debtor's bankruptcy schedules A/B, D-H [Dkt. #63] and Statement of Financial Affairs [Dkt. #64] filed by the Trustee.

2.48 "**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code § 506(a).

2.49 "**Siragusa**" or "**Paul Siragusa**" means and refers to Paul Siragusa, the creator of Sneaker Shields.

2.50 "**Sneaker Shields**" means and refers to the product produced and sold by the Debtor. Sneaker Shields are a type of shoe tree that are placed and worn inside a consumer's

sneakers to preserve the shape of the sneaker and prevent creasing. The pending patents and intellectual property associated with Sneaker Shields are owned by OSR and licensed to the Debtor under a License Agreement.

2.51    "**SR Squared**" refers to SR Squared, LLC, the entity which currently holds a 51% ownership interest in the Debtor.

2.52    "**State Court**" means the 416th Judicial District Court of Collin County, Texas.

2.53    "**State Court Lawsuit**" means Cause No. 416-01822-2017 styled *Paul Siragusa v. Jitendra Rajpal a/k/a Jay Rajpal, Ram Daswani, and SR Squared LLC*, pending in the State Court. The State Court Lawsuit has been removed to the Bankruptcy Court and docketed as Adversary Proceeding No. 19-03032 (the "**State Court Adversary**"). Where the context so requires, "**State Court Lawsuit**" also refers to and includes the State Court Adversary.

2.54    "**Texas Comptroller**" means the Texas Comptroller of Public Accounts, the filer of Proof of Claim No. 1 in this Case.

2.55    "**Trustee**" means Christopher J. Moser, the duly appointed and approved Chapter 11 Trustee for the Estate.

2.56    "**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

---

## Article III.    VOTING ON THE PLAN AND OBJECTIONS

---

### 3.01    Disclosure Statement Order

The Bankruptcy Court has entered the enclosed Disclosure Statement Order pursuant to Bankruptcy Code § 1125(f)(3), thereby conditionally approving the disclosures contained in a prior version of this Plan as providing sufficient information to enable the holders of Claims against the Debtor to make an informed judgment with respect to the Plan. The Disclosure Statement Order sets forth the deadlines for voting on or objecting to the Plan and the date of the Confirmation Hearing, at which time the Court will also consider final approval of the disclosures contained in this Plan. *The Court has not yet determined whether the Plan meets the legal requirements for Confirmation, and the Court's entry of the Disclosure Statement Order does not constitute an endorsement of the Plan by the Court or a recommendation that it be accepted.*

### 3.02    Who May Vote

You are entitled to vote on the Plan unless:

   (1)      your Claim or Interest is Disputed (as defined herein);

   (2)      your Class receives no distribution (presumed to reject the Plan);

---

(3)    your Class is "unimpaired" (presumed to accept the Plan – *See* Sections 6.01 and 6.02 to see if your Class is Impaired or unimpaired); or

(4)    your Claim is unclassified (and thus required by law to be paid in full).

If your Claim or Interest is Disputed, then you must file a motion and have it allowed for voting purposes, which you are urged to do as soon as possible. Your motion must be heard and ruled upon by the Bankruptcy Court prior to the voting deadline set forth in the Disclosure Statement Order. See Bankruptcy Rule 3018(a) for additional information.

## 3.03   How to Vote

Fill out and return the attached ballot (if you are entitled to vote) **by the deadline** and according to the other instructions in the enclosed Disclosure Statement Order regarding voting and procedures.

## 3.04   Effect of Vote

The Plan will be confirmed only if it meets the legal requirements for Confirmation and:

(1)    it is accepted by each Impaired Class; or

(2)    it is accepted by at least one Impaired Class (without counting votes of "insiders," as defined by Bankruptcy Code § 101(31)) and the Bankruptcy Court determines that the Plan is "fair and equitable" as defined in Bankruptcy Code § 1129(b) to all rejecting Classes of Creditors.

A Class of Creditors accepts the Plan if a majority in number and at least two-thirds (2/3) in dollar amount of the Claims in that Class are timely voted in favor of the Plan. *See* Bankruptcy Code § 1126(d).

## 3.05   Who May Object

Even if you are not entitled to vote, you may object to Confirmation of the Plan if you believe that the requirements for Confirmation are not met (and if you are a party in interest in this bankruptcy case). For the deadlines and procedures to objecting to Confirmation, see the enclosed Disclosure Statement Order.

---

## Article IV.    DISCLOSURE STATEMENT

---

## 4.01   Background of the Debtor and Events Leading to Bankruptcy

The Debtor is in the business of manufacturing and selling a product called "**Sneaker Shields**". Sneaker Shields are a type of shoe tree that is worn inside of a consumer's sneaker to preserve the shape of the shoe and prevent creasing. Sneaker Shields were invented around 2006 by Paul Siragusa. From 2007 through 2016, Siragusa manufactured

and sold Sneaker Shields through various online platforms, e.g. EBay, Amazon, and the company's website. Sales during the first year were around $20,000.00, and doubled year-over-year for several years thereafter.

OSR holds the trademarks and patents to the Sneaker Shields technology. The Debtor and OSR are parties to a License Agreement wherein OSR has licensed to the Debtor its right to use intellectual property in consideration of a royalty payment payable yearly based upon ten percent (10%) of the net operating income generated by the Debtor from the intellectual property. Upon information and belief, OSR has never received a royalty payment from the Debtor under the License Agreement.

In 2016, Siragusa was introduced to Jitendra Rajpal a/k/a Jay Rajpal and Ram Daswani. Rajpal and Daswani expressed interest in purchasing the assets of Siragusa's businesses, Box Fresh LLC and Wearable Shoe LLC, which consisted primarily of a wearable shoe tree product which can be inserted into a shoe and worn by the user, the manufacturing molds, and certain intellectual property rights associated with the product. Around September 2016, the parties entered into an Asset Purchase Agreement, including certain attachments and exhibits (hereinafter collectively referred to as the "**Purchase Agreement**"). The actual purchaser of the assets was a limited liability company known as Shoe Shields LLC ("**Debtor**") whose members consisted of SR Squared and Siragusa.

The details of the Purchase Agreement are heavily disputed. According to Siragusa, Rajpal and Daswani have attempted to take over Siragusa's business through a "bait and switch" transaction involving the Purchase Agreement wherein, among other things, the purchase price for the business was changed from the agreed upon price to a reduced price. Rajpal and Daswani vehemently dispute this allegation.

On April 19, 2017, Siragusa filed suit against Rajpal, Daswani, and other related parties in the 416th Judicial District Court of Collin County, Texas, Cause No. 416-01822-2017 styled *Paul Siragusa v. Jitendra Rajpal a/k/a Jay Rajpal, Ram Daswani, and SR Squared LLC* (the "**State Court Lawsuit**"), seeking, *inter alia*, to rescind the Purchase Agreement in its entirety.

The Trustee's understanding of the facts surrounding the Purchase Agreement, based upon the pleadings in the State Court Lawsuit and discussions with the parties, is as follows:

- The purchasers of the assets formed a new entity called Shoe Shields LLC (i.e. the Debtor) to manufacture and sell Sneaker Shields. Siragusa alleges that Rajpal and Daswani were to jointly hold a 51% Interest in the Debtor and that Siragusa would retain a 49% Interest with managerial control. (NOTE: Rajpal and Daswani's 51% Interest in the Debtor is, upon information and belief, held by an entity owned and controlled by Rajpal and/or Daswani called SR Squared, LLC).

- Siragusa alleges that Rajpal and Daswani were to invest $500,000.00 in the Debtor in exchange for their 51% Interest. Rajpal and Daswani allege that the price agreed upon was $25,000.00.

- The only copy of the Purchase Agreement produced to the Trustee reflects a purchase price of $25,000.00. Siragusa alleges causes of action against Rajpal and Daswani in the State Court Lawsuit and asserts that Purchase Agreement was fraudulently altered after execution. Rajpal and Daswani dispute all allegations regarding altering the terms of the Purchase Agreement.

- Following the closing of the Purchase Agreement, the Debtor transferred the patents associated with the production of the sneaker shield product and all intellectual property to OSR Patent, LLC, an entity owned 51% by SR Squared and 49% by Siragusa.

- Upon information and belief, the Debtor and OSR filed a Chapter 11 bankruptcy to stop the State Court Lawsuit and to attempt to obtain a different court to resolve the issues associate with the Purchase Agreement.

Due to the issues relating to the ownership of the Debtor's assets and issues relating to the management of the Debtor, the Bankruptcy Court appointed a Chapter 11 Trustee to operate and manage the Debtor and OSR.

**4.02**   **Significant Events Since the Petition Date**

**a.**   On January 18, 2019, OSR filed a voluntary petition in the Bankruptcy Court thereby commencing the OSR Bankruptcy Case. The OSR Bankruptcy Case is jointly administered with this Bankruptcy Case of the Debtor [Dkt. #46].

**b.**   On January 24, 2019, the Debtor, under the control of Rajpal, filed an adversary complaint against Siragusa [Dkt. #9] pursuant to § 542 of the Bankruptcy Code seeking turnover of all property of the Estate in Siragusa's possession. The proceeding is docketed as Adversary Proceeding No. 19-03008 and styled *Shoe Shields LLC v. Paul Siragusa*.

**c.**   On February 20, 2019, the Court entered an *Order Approving Appointment of Chapter 11 Trustee* [Dkt. #42], thereby approving the appointment of Christopher J. Moser as the Chapter 11 Trustee for the Debtor's bankruptcy estate.

**d.**   On March 1, 2019, Debtor's counsel, John Gitlin, on behalf of the State Court Lawsuit defendants, Rajpal and SR Squared, filed a *Notice of Removal* in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, thereby removing the State Court Lawsuit to said bankruptcy court. On March 25, 2019, the State Court Lawsuit was transferred to the Bankruptcy Court (for the Northern District of Texas, Dallas Division) and docketed as Adversary Proceeding No. 19-03032 [*See* Dkt. #74].

**e.**   On March 19, 2019, the Trustee filed Schedules A/B and D-H [Dkt. #63] and the Statement of Financial Affairs [Dkt. #64] for the Debtor.

**f.**     On March 22, 2019, the Court entered an *Order on Application by Chapter 11 Trustee to Employ Quilling, Selander, Lownds, Winslett & Moser, P.C. as General Counsel* [Dkt. #71], thereby approving the employment of QSLWM as the bankruptcy counsel for the Trustee.

g.     On March 22, 2019, the Court entered an *Order Authorizing Employment of Jeff Wright Consulting Services, LLC as Accountant for Trustee* [Dkt. #72], thereby approving the employment of JWCS as the accountant for the Trustee/Estate.

h.     On April 16, 2019, the Trustee filed his Chapter 11 Plan of Reorganization Combined with Disclosure Statement [Dkt. #95] (the "**Trustee's Plan**").

i.     On April 23, 2019, the Court entered an *Order Modifying Automatic Stay to Allow Parties to Proceed with Litigation* [Dkt. #98] and an *Order Granting Motion to Remand* [Adv. Proc. No. 19-03032 Dkt. #15], thereby remanding the State Court Lawsuit back to the State Court as against the non-Debtor parties. However, the Order provided that the automatic stay imposed by Bankruptcy Code § 362 will remain in effect as to the causes of action seeking rescission and/or the causes of action seeking declaratory judgment for the equitable relief of rescission of the Purchase Agreement.

**j.**     On April 24, 2019, the Court entered an *Order Granting Motion for Authority to Spend Funds Outside the Normal Course of Business* [Dkt. #104], thereby authorizing the purchase of new injection molds to be used in the production of Sneaker Shields. As mentioned in section 4.03(e) below, the current molds are worn and in need of replacement. The Order authorized the Trustee to purchase the molds from Maxwell Manufacturing, Inc. for a price not to exceed $43,720.00.

**k.**     On April 24, 2019, the Court entered an order conditionally approving Trustee's Disclosure Statement [Dkt. #105].

**l.**     On April 24, 2019, SR Squared filed its *Creditor's Chapter 11 Plan of Liquidation Combined with Disclosure Statement* [Dkt. #102] ("**SR Squared's Plan**").

**m.**     On April 29, 2019, the Court entered an order conditionally approving SR Squared's Disclosure Statement [Dkt. #112].

**n.**     On April 29, 2019, Siragusa filed his *Motion to Dismiss Case* pursuant to §§ 105 and 1112(b) of the Bankruptcy Code [Dkt**.** #113].

### 4.03   <u>Assets of the Debtor</u>

According to the Debtor's Schedules and Statements, the Debtor owned Assets totaling **$243,184.77** as of the Petition Date, which are described as follows:

**a.**     **Cash and Cash Equivalents ($64,175.00).** As of the Petition Date, the Debtor held $9,077.00 in its checking account with Bank of America; $44,743.00 in its PayPal

account; $5,314.00 in its Amazon account; $5,041.00 in its account with Stripe (a credit card processor); and $0.00 in its EBay account.

b.    **Accounts Receivable ($2,000.00).** The Debtor held accounts receivable of $2,000.00 on the Petition Date, all of which were 90 days old or less.

c.    **Inventory ($31,500.00).** The Debtor owned $31,500.00 of inventory on the Petition Date, per a cost method valuation.

d.    **Office Furniture, Fixtures, and Equipment ($2,250.00).** The Debtor owns conference tables and chairs, desks, chairs, and cubicles worth approximately $500.00 and computer equipment worth approximately $1,750.00.

e.    **Machinery, Equipment, and Vehicles ($5,000.00).** The Debtor owns injection molds for the production of Sneaker Shields worth an estimated $5,000.00 as of the Petition Date. These injection molds were purchased for approximately $30,000.00, but they are old and worn and in need of replacement.

f.    **Real Property ($0.00).** The Debtor leased its office space located at 4950 Keller Springs Rd. Ste 420, Addison, Texas 75001. It does not own any real property.

g.    **Intangibles ($100,000.00).** The Debtor owns customer mailing lists worth an estimated $100,000.00 as of the Petition Date. OSR owns patents pending and the Sneaker Shield trademark worth an estimated $500,000.00, as well as internet domain names and websites worth an estimated $300,000.00, which are not included the calculation of the Debtor's total Assets herein. The Debtor has license agreements with OSR to use the Sneaker Shield trademark and domain name, which will be assumed under this Plan.

h.    **Other Assets (Unknown).** The Debtor has potential avoidance claims under Chapter 5 of the Bankruptcy Code and other potential state law causes of action for an unknown amount against certain entities including but not limited to, Siragusa, Rajpal, Daswani, and other entities associated with the State Court Lawsuit. More specifically, the Trustee is investigating a potential claim against Rajpal and possibly other parties for the transfer of $38,259.77 from Debtor's Bank of America account to a new Debtor account opended by Rajpal at BB&T. Additionally, Trustee is investigating a potential claim against Siragusa relating to approximately $100,000.00 of payments he received from the Debtor prior to bankruptcy. Both Rajpal and Siragusa assert that the claims are without merit.

**4.04    Liabilities of the Debtors**

According the Debtor's Schedules and the Proofs of Claim filed in this Case, the Debtor's liabilities (excluding Administrative Expense Claims) totaled approximately **$596,661.35** as of the Petition Date. The Debtor's liabilities are described as follows:

a.   **Administrative Expense Claims.**

The Debtor will be liable for certain Administrative Expense Claims pursuant to Bankruptcy Code § 503(b) through the Confirmation Date, including Fee Claims of QSLWM as the Trustee's bankruptcy counsel and JWCS as the Trustee's accountant. Currently the Trustee does not anticipate that the total administrative expense fees in this case will exceed $68,000.00. The Debtor also owes ongoing quarterly fees to the U.S. Trustee. Before the Debtor pays any Fee Claim of QSLWM or JWCS, the Bankruptcy Court will have determined the reasonableness of such fees and expenses.

The Debtor will also be liable for payment of fees and commission to the Trustee in accordance with §§ 326, 330, and 503 of the Bankruptcy Code. Based on estimated disbursements of $200,000.00, the Trustee's fees incurred in this Case will be approximately $13,250.00 (calculated pursuant to Bankruptcy Code § 326).

b.   **Secured Claims.** PayPal holds a Secured Claim against the Debtor of $33,093.00 in connection with a Working Capital Loan extended to the Debtor in January, 2019. PayPal is receiving 30% of each Sneaker Shield sale made through PayPal in repayment of this loan. There are no other Secured Claims against the Debtor.

c.   **Priority Claims.** The Texas Comptroller holds a Priority Tax Claim against the Debtor in the amount of $4,887.77 [Proof of Claim #1] resulting from sales and use tax owed by the Debtor. Rajpal has filed an unsecured priority claim in the amount of $13,650.00 for unpaid wages incurred within 180 days of the Petition Date. Trustee disputes this Claim and will object to the Claim since, upon information and belief, Rajpal admitted under oath that he is not entitled to a priority claim as he was not employed by the Debtor during the 180 days prior to the filing of this case.

d.   **General Unsecured Claims.**

According to the Debtor's Schedules and Statements, the Debtor owes total Unsecured Claims of approximately **$558,680.58** as of the Petition Date. Of this amount, only **$16,167.27** worth of Claims are undisputed and therefore are Allowed Claims under this Plan.

The following Unsecured Claims are undisputed and are thus Allowed Claims under this Plan:

| | |
|---|---|
| Bank of America | $1,878.00 |
| DHL | $4,089.03 |
| Roof Pros | $8,140.00 |
| PayPal | $1,190.79 |
| Texas Comptroller | $569.45 |
| Veritiv | $300.00 |
| **Total undisputed Unsecured Claims:** | **$16,167.27** |

The following Claims were either scheduled as Disputed on the Debtor's bankruptcy schedules or formal Claim objections have been filed or will be filed regarding the Claim and are thus NOT Allowed Claims under this Plan:

| | |
|---|---|
| Albert Inc. (marketing vendor): | $21,786.00 |
| Kennington Commercial: | $4,431.00 |
| OSR Patent, LLC | $30,000.00 |
| Jay Rajpal | $102,000.00 |
| SR Squared, LLC | $94,296.31 |
| Paul Siragusa (unpaid salary): | $280,000.00 |
| Sum Digital: | $10,000.00 |
| **Total Disputed Unsecured Claims:** | **$542,513.31[1]** |

## 4.05    Tax Consequences of the Plan

**a.**    **Disclaimer.** The Debtor does not purport to provide tax advice to the holders of Claims. The following is intended only as a summary of possible federal income tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. The following is for information purposes only and is NOT tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances. Accordingly, holders of Claims are urged to consult with their tax advisors about the federal, state, local, and foreign tax consequences of the Plan on their tax returns and tax liabilities.

**b.**    **Tax Consequences.** Implementation of the Plan may result in federal income tax consequences to holders of Claims or Interests and the Debtor. Tax consequences to a particular Claim or Interest holder may depend on the particular circumstances or facts regarding the Claim or Interest. IRS Publication 908, entitled "Bankruptcy Tax Guide" provides valuable information regarding the federal income tax aspects of bankruptcy. The "Bankruptcy Tax Guide" is available directly from the IRS online at http://www.irs.gov/pub/irs-pdf/p908.pdf.

**c.**    **Cancellation of Debt.** Cancellation of the Debtor's debt ("**COD**") is generally considered as taxable income of the Debtor. COD is the amount by which the indebtedness discharged exceeds any consideration given in exchange. However, there are exceptions which prevent COD from being treated as taxable income. To the extent the Debtor is insolvent or the Debtor is discharged in a bankruptcy proceeding, as is the case at bar, the Internal Revenue Code excludes COD from income. The statutory exclusion for COD from the Debtor's gross income in a Chapter 11 bankruptcy case arises where a discharge is granted by the Court as is requested in the Plan.

---

[1] Should any Disputed Claim become an Allowed Claim, it will be paid in full with interest at 4% pursuant to this Plan (See Section 6.04 of this Plan).

    **d.**     **Holders of Allowed Claims.** The tax consequences associated with distributions under the Plan to the holders of an Allowed Claim will depend on, among other things: (i) the consideration received or deemed to have been received by the holder of any such Claim; (ii) whether the Allowed Claim holder reports income on an accrual or cash basis; (iii) the taxable year in which any distributions under the Plan are received by the Allowed Claim holder; (iv) whether the Claim was Allowed or Contested/Disputed as of the Effective Date; and (v) whether such Allowed Claim holder had previously written the obligation off as bad debt. ALLOWED CLAIM HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

---

## Article V.     LIQUIDATION ANALYSIS

---

Section 1129(a)(7) of the Bankruptcy Code requires that a Chapter 11 plan of reorganization must provide at least as much value to each Impaired Creditor as could be realized in a liquidation under Chapter 7 of the Bankruptcy Code. As shown by the Schedules and Statements, the Debtor's Assets are worth $243,184.77 in liquidation, and the Debtor's total liabilities are $596,661.35.

In determining whether the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets in Chapter 7. Such amounts must then be reduced by the costs and expenses of the liquidation. Further reductions would be required to eliminate cash and asset liquidation proceeds that would be applied to Secured Claims and amounts necessary to satisfy priority Claims that are senior to general Unsecured Claims (including Administrative Expense Claims that may result from the termination of the Debtor's business and the liquidation of its assets).

The Debtor's assets consist primarily of the following: cash; inventory; intangibles; receivables; and potential causes of action. Per the Debtor's Schedules, these assets as a going concern are worth at least $243,184.77. In a forced liquidation under Chapter 7 these assets, upon information and belief, are worth approximately 70% of the going concern value, or approximately $170,000.00.

After determining the liquidation value of the Debtor's assets, the next step in a liquidation analysis is to estimate the liquidation expenses such as legal fees, accounting fees, statutory trustee fees, and auction expenses which will be incurred in Chapter 7. The Trustee estimates that in Chapter 7 the liquidation expenses would total approximately $75,000.00. This would leave approximately $95,000.00 to be paid to Creditors with Claims exceeding $322,000, assuming all Disputed Claims are allowed. Total claims may be as low as $50,000, assuming all Disputed Claims are disallowed. Thus, in Chapter 7 it is possible for a distribution to Creditors to range from 100% to 30%.

This Plan proposes to pay one hundred percent (100%) plus four percent (4%) interest of all Secured Claims, Priority Tax Claims, Allowed Unsecured Claims and Allowed Unsecured Claims of Insiders. Insider's Unsecured Claims will be subordinated and will receive no distribution under

this Plan until the Claim either (a) becomes Allowed, at which time Allowed Insider Claims will be paid in full plus 4% interest from available cash, or (b) is litigated to judgment in the State Court Lawsuit. Accordingly, the Plan proposes to pay all Impaired Claims at least as much as such Claims would realize under a Chapter 7 liquidation, and the Plan therefore satisfies the requirements of § 1129(a)(7) of the Code.

---

## Article VI.    PLAN OF REORGANIZATION

---

**6.01    Classification of Claims and Interests**

Claims against the Debtor, excluding Administrative Expense Claims and Priority Tax Claims, are divided into the following Classes:

> **Class 1 Claim:** the Allowed Secured Claim of PayPal.

> **Class 2 Claim:** all Allowed Unsecured Claims.

> **Class 3 Claim:** the Interests in the Debtor.

> **Class 4 Claim:** the Allowed Unsecured Claims of Insiders, if any.

**6.02    Claims and Interests Impaired Under the Plan**

Claims in Class 4, if any, are Impaired within the meaning of Bankruptcy Code § 1124. Claims in Classes 1, 2, and 3 are unimpaired and not entitled to vote on this Plan. Class 4 Claimants, if any, are Insiders and are therefore not entitled to vote on this Plan.

**6.03    Treatment of Unclassified Claims, Administrative Expense Claims, Priority Claims, and U.S. Trustee Fees**

a.    **Unclassified Claims.** All Allowed Claims (except Administrative Expense Claims and Priority Tax Claims) are placed in Classes for all purposes, including voting on, confirmation of, and distributions under this Plan. In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Allowed Priority Tax Claims have not been classified.

b.    **Administrative Expense Claims.** Each holder of an Administrative Expense Claim under Bankruptcy Code § 503 shall receive either: (i) with respect to Administrative Expense Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date, from the Debtor; (ii) with respect to Administrative Expense Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim becomes an Allowed Administrative Expense Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

---

1.    <u>Fee Claims.</u> Each professional person whose retention with respect to the this Case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Expense Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely any such application as required shall result in the Fee Claim being forever barred and discharged. A Fee Claim, with respect to which a Fee Application has been properly filed, shall become an Administrative Expense Claim only to the extent allowed by Final Order. Fee Claims shall be paid either: (i) with respect to Fee Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date, from the Debtor; (ii) with respect to Fee Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim becomes an Allowed Fee Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

2.    <u>Administrative Expense Claims Bar Date.</u> Any other person or entity who claims to hold an Administrative Expense Claim (other than a Fee Claim) shall be required to file with the Bankruptcy Court an application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely the application as required under this section 6.03(b)(2) of this Plan shall result in the Claim being forever barred and discharged. An Administrative Expense Claim with respect to which an application has been properly filed and to which no timely objection has been filed or an objection has been filed but overruled by the Bankruptcy Court, shall become an Allowed Claim to the extent such Claim is allowed by Final Order.

c.    **Priority Tax Claims.** Any holder of a Priority Tax Claim within the meaning of Bankruptcy Code § 507(a)(8) will be paid in accordance with the provisions of Bankruptcy Code § 1129(a)(9)(C) and (D), unless an agreement has been reached otherwise.

1.    <u>Priority Tax Claim of the Texas Comptroller [Proof of Claim No. 1]</u>: The Texas Comptroller shall have an Allowed Priority Tax Claim of $4,887.77, which shall be paid in full, with interest at four percent (4%), within twenty-one (21) days of the Effective Date.

d.    **United States Trustee Fees.** All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any U.S. Trustee Fee owed on or before the Effective Date of the Plan will be paid on the Effective Date.

**6.04**     <u>**Treatment of Classified Claims and Interests Under the Plan**</u>

    **a.**     **Class 1: PayPal Secured Claim – UNIMPAIRED.** PayPal shall have a Class 1 Secured Claim in the amount of $33,093.00. PayPal's Claim is secured by the Debtor's deposit account with PayPal. The Allowed Secured Claim of PayPal will be paid in full according to its pre-petition agreement with the Debtor from subsequent sales that the Debtor makes through PayPal. In other words, there will be no payments required from the Debtor under this Plan to the Class 1 Claim of PayPal. PayPal's Secured Claim will be paid from the percentage of each future Sneaker Shields sale made through PayPal's online platform, which is collected by PayPal pursuant to its pre-petition agreement with the Debtor. PayPal is currently averaging over $4,000.00 per month in collections from the Debtor, and its Secured Claim is anticipated to be fully satisfied by September, 2019. All terms of any pre-petition agreements or contracts between PayPal and the Debtor, and all legal, equitable, and contractual rights thereunder, shall remain unaltered. Upon and after Confirmation, the Debtor shall timely perform all payment and other obligations pursuant to its pre-petition agreements or contracts with PayPal following the Effective Date, and shall timely perform its obligations to PayPal under this Plan.

    **b.**     **Class 2: Allowed Unsecured Claims – UNIMPAIRED.** The Allowed Unsecured Claims in Class 2 total $16,167.27 as of the date of this Plan. Class 2 Claims will be paid in full with interest at four percent (4%) within twenty-one days following the Effective Date. In the event that a Disputed, Contested, or otherwise disallowed Unsecured Claim becomes an Allowed Unsecured Claim following Confirmation, such Claim will be paid in full with 4% interest within thirty (30) days of the Claim becoming an Allowed Claim. The Claims in Class 2 as of the date of this Plan are as follows:

| | |
|---|---:|
| Bank of America | $1,878.00 |
| DHL | $4,089.03 |
| Roof Pros | $8,140.00 |
| PayPal | $1,190.79 |
| Texas Comptroller | $569.45 |
| Veritiv | $300.00 |
| **Total:** | **$16,167.27** |

    **c.**     **Class 3: Interests in the Debtor – UNIMPAIRED.** All Interest holders in the Debtor shall retain their Interests in full. Ownership in the Debtor is subject to pending litigation, i.e. the State Court Lawsuit, as further detailed herein.

    **d.**     **Class 4: Allowed Unsecured Claims of Insiders, if any – IMPAIRED.** Any claims of Insiders shall be determined through either (a) the claims objection process set forth herein or (b) litigation to judgment in the State Court Lawsuit. Insiders may obtain Allowed Unsecured Claims if such Claims are approved by a Final Order of the Bankruptcy Court. Unless and until such Insider Claims of are approved by the Court, the Claims are not Allowed Claims under this Plan. In the

event that an Insider obtains an Allowed Unsecured Claim, such Claim will be paid in full by the Reorganized Debtor, with interest at four percent (4%) per annum, after the payment in full of (i) all Allowed Administrative Expense Claims, including Fee Claims and (ii) all Allowed unsecured priority Claims. Should there be insufficient cash to pay an Allowed Unsecured Claim of an Insider then the Insider will be paid from available cash and repaid the remainder of the Allowed Claim at the rate of $5,000.00 per month, commencing during the month after the Insider's Claim becomes an Allowed Claim, until paid in full with interest at four percent (4%). Insiders are not entitled to vote on this Plan.

## 6.05    Implementation of the Plan

a.    **Source of Payments.** The Debtor intends to make all payments required under the Plan from the following sources:

1.    Available Cash. The Debtor projects that it will have approximately $100,000.00 of available cash on the Effective Date.

2.    Current Monthly Income and Future Disposable Income. The Debtor calculates that its monthly disposable income available to fund Plan payments after the Effective Date will be approximately $16,974.88. This estimate is based upon a projected monthly gross income of approximately $45,190.53 and projected monthly expenses of approximately $28,215.55, resulting in an estimated monthly net income of at least $16,974.88 over the life of this Plan. The Debtor believes that this estimate is accurate based upon its current and historical income. A detailed projection of the Debtor's monthly budget is set forth in section 6.06 hereinbelow.

b.    **Plan Payments.** As set forth in sections 6.03 and 6.04 herein above, all payments required under this Plan are entitled to payment upon the Effective Date and will be paid within twenty-one (21) days thereof. The estimated Claims entitled to payment upon the Effective Date are as follows:

| **Administrative Expense Claims*** | |
|---|---|
| QSLWM* | $35,000.00 |
| JWCS* | $15,000.00 |
| Trustee's Fees | $13,250.00 |
| Quarterly Fees to U.S. Trustee | $975.00 |
| **Total Administrative Claims:** | **$64,225.00** |
| | |
| **Priority Tax Claims** | |
| Texas Comptroller | $4,887.77 |
| **Total Priority Tax Claims:** | **$4,887.77** |
| | |
| **Unsecured Claims** | |
| Bank of America | $1,878.00 |
| DHL | $4,089.03 |

| | |
|---|---:|
| Roof Pros | $8,140.00 |
| PayPal** | $1,190.79 |
| Texas Comptroller | $569.45 |
| Veritiv | $300.00 |
| **Total Unsecured Claims:** | **$16,167.27** |

**Total Claims to be paid on Effective Date:**     **$21,055.04***

\* This total of Claims to be paid on the Effective Date does not include Administrative Expense Claims. Administrative Expense Claims, including the Fee Claims of QSLWM, the Fee Claim of JWCS, the U.S. Trustee's Quarterly Fees and the Trustee's statutory commission, will be paid in full from available cash as soon as possible after approval of a Fee Application (if required), which is expected to be sometime after the Effective Date. In other words, on the Effective Date the cash requirements to pay Allowed unsecured priority Claims and Allowed general Unsecured Claims in full with 4% interest will be approximately **$21,897.24** (i.e., $21,055.04 plus 4% interest of $842.20).

\*\* As set forth in section 6.04(a) of this Plan, the Allowed Secured Claim of PayPal will receive no distribution under this Plan. Rather, it will be paid from a percentage of future sales pursuant to its pre-petition agreements with the Debtor. The Allowed Unsecured Claim of PayPal will be paid in full in accordance with the treatment afforded to all other Class 2 Claims.

c.     **Management and Disbursing Agent.** Management of the Debtor is currently controlled by the Trustee. The Trustee will continue to manage the Reorganized Debtor and will serve as the disbursing agent for purposes of making all transfers and payments required under this Plan until such time as the Trustee has paid in full (i) all Allowed Administrative Expense Claims, including Fee Claims, (ii) all Allowed Priority Tax Claims and other priority Claims, if any, and (iii) all Allowed Unsecured Claims. Following the payment of these Claims and following the entry of an order directing the turnover of management by either the Bankruptcy Court or the State Court, the Trustee will discontinue managing the Reorganized Debtor.

d.     **Dismissal of OSR Bankruptcy Case.** Upon Confirmation of this Plan, the OSR Bankruptcy Case will be dismissed without prejudice by operation of Confirmation. Upon information and belief, OSR does not have any creditors nor does it owe any obligations to any third party.

e.     **Risk Factors.** *Consider carefully the factors set forth below and the other information set forth in this Plan prior to voting on the Plan. These risk factors should not, however, be regarded as constituting the only risks involved with the Plan and its implementation.*

     1.     <u>Projected Income.</u> The projections for the Debtor's future cash flows are based upon a variety of assumptions related to its operations. The projected income is based on the assumption that the income generated from the

Debtor's business will remain constant or increase which, although likely, is not a certainty. Additionally, factors such as government regulation are impossible to predict and can have an enormous impact on the Debtor's business. Moreover, the financial projections assume Confirmation and consummation of this Plan. While the Debtor believes that its projections are reasonable and attainable, variations between projected and actual results may occur and be material.

2.    <u>Bankruptcy Considerations.</u> Although the Debtor believes that the Plan satisfies all requirement necessary for Confirmation, there can be no assurance that the Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes to accept the Plan as modified.

## 6.06   <u>Feasibility of the Plan</u>

All Claims dealt with and repaid by the terms of this Plan will be entitled to payment in full with interest at 4% on the Effective Date. The Debtor believes that it will have approximately $100,000.00 worth of cash on hand on the Effective Date, which is sufficient to pay all Allowed Claims on the Effective Date of the Plan.

The Debtor was holding approximately $88,561.47 in cash at the end of March, 2019. Based upon a projected monthly net income for the months of April through July 2019 of at least $15,000.00 per month, and after deducting the upcoming purchase of new injection molds for $43,720.00 (see section 4.02 of this Plan), the Debtor should be holding approximately $100,000.00 in cash on the Effective Date. The Debtor's projected monthly income and expenses through the Effective Date are as follows:

| Income | |
|---|---:|
| Merchandise Sales | $46,578.64 |
| Refunds | ($686.53) |
| Costs of Goods Sold | ($701.66) |
| **Gross Income** | **$45,190.45** |
| | |
| Expense | |
| Advertising and Promotion | $1,153.66 |
| Sales Tax | $1,000.00 |
| Bank Service Charges | $7.50 |
| Computer and Internet Expense | $99.95 |
| Dues & Subscriptions | $684.56 |
| Insurance Expense | $380.63 |
| Internet Expenses | $262.76 |
| Interest Expense | $609.00 |
| Legal Expenses | $73.50 |
| Meals and Entertainment | $480.88 |
| Office Supplies | $5.41 |

| | |
|---|---|
| Outside Services - Box Fresh | $8,000.00 |
| Outside Services - Other | $2,341.96 |
| Postage | $7,895.70 |
| Shipping Supplies | $75.78 |
| Telephone Expense | $598.76 |
| Web Site Expenses | $4,545.52 |
| **Total Expenses** | **$28,215.57** |
| **Net Income** | **$16,974.88** |

**6.07**    **Provisions Regarding Distributions and Objections to Claims**

a.      **Time of Payment.** The first month in which payments will be made under this Plan will be the month immediately following the Effective Date, unless otherwise provided by the terms of this Plan. All payments required under this Plan shall be made by no later than the first Business Day following the fourteenth (14th) day of the month in which said payments are due, unless otherwise agreed to by the holder of such Claim and the Debtor or unless otherwise stated herein this Plan.

b.      **Delivery of Payment.** All payments or distributions required under this Plan shall be made to holder of the applicable Claim at: (i) the address set forth on the Proofs of Claim filed by such holders (or at the last known address of such holders if no Proof of Claim is filed or if the Debtor has been notified of a change of address); (ii) the address set forth in any written notices of address change delivered to the Debtor after the date of any related Proof of Claim; or (iii) if neither of the foregoing is applicable, at the addresses reflected in the Debtor's bankruptcy schedules, unless otherwise agreed to by the holder of such Claim and the Debtor.

c.      **No Distribution Pending Allowance or Estimation of Claims.** No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim or Allowed Interest, as determined by Final Order. No holder of a Claim shall be entitled to any payment under the Plan if such holder has retained property of the Estate.

d.      **Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of prepetition Claims at any time prior to sixty (60) days after the Effective Date or, as to Claims based upon the Debtor's rejection pursuant to this Plan of an executory contract or unexpired lease, at any time prior to thirty (30) days after the filing of any such rejection Claim. Any Proof of Claim filed after the Bar Date shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

e. **Suspension of Payments on Disputed Claims.** If any Claim has been objected to within the time required, the Debtor shall segregate and set aside, from the funds on hand for distribution to the Claimant's Class, funds sufficient to satisfy the payment otherwise due on the Claim according to the provisions of the Plan. In the event that the claim objection is overruled or a dispute is resolved favorably to the party asserting the Claim, then the funds shall be paid to the Creditor in accordance with applicable Class provisions. In the event that the Disputed Claim is disallowed, the funds segregated in deference to the Claim shall be disbursed to other parties in interest, according to the applicable provisions of the Plan.

## 6.08 Executory Contracts

a. **General Provisions.** "Assumption" of an executory contract or unexpired lease means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to Confirmation, unless the Court has set an earlier time.

b. **Assumption of Certain Executory Contracts and Leases.** The Debtor will ASSUME the following executory contracts and leases:

1. License Agreement with OSR.

Trustee will object to the Proof of Claim filed by OSR in order to determine whether funds are owed by the Debtor to OSR under the License Agreement. Within thirty (30) days of the establishment of an Allowed Claim in favor of OSR the Debtor will pay the claim in full with four percent (4%) interest.

c. **General Rejection of Executory Contracts and Unexpired Leases.** Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.08(b) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, or that were entered after the Petition Date, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. In particular, the Debtor will reject the sublease of a warehouse from Roof Pros, 6247 Walnut Hill Lane, Dallas, Texas 75230.

d. **Cure of Defaults.** The Debtor believes that none of the executory contracts and unexpired leases assumed under this Plan are in default. To the extent that the Debtor is in default, the Debtor shall cure all defaults existing under any assumed executory contract or unexpired lease, pursuant to the provisions of sections 1123(a)(5)(G) and 365(b) of the Bankruptcy Code, by paying the amount, if any, determined by the Bankruptcy Court required to be paid in order to assume such

executory contract or lease. Payment of such amounts shall be made by Debtor as soon as possible after the Effective Date.

e. **Objections.** If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the Confirmation of the Plan.

## 6.09 Default

No default in the performance of this Plan shall automatically result in the termination of the Plan or constitute a revocation of the Confirmation Order. If any party in interest believes that the Debtor is in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Trustee, the Debtor and its counsel prior to filing a motion with the Bankruptcy Court regarding the alleged noncompliance or otherwise seeking Bankruptcy Court enforcement of the terms of this Plan.

## Article VII.   RESERVATION OF CLAIMS

## 7.01 Reservation of Claims and Causes of Action

a. Any and all claims, causes of action, cross claims, or counterclaims held or assertable by the Debtor, including but not limited to: (i) any claim or cause of action under a policy of liability insurance or otherwise; (ii) the Avoidance Actions; and (iii) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtor has or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained for enforcement by the Reorganized Debtor as of the Confirmation Date. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's Schedules and Statements. The Reorganized Debtor

shall have standing and authority to pursue all of the Debtor's claims and causes of action.

    **b.**    Any and all claims, causes of action, cross claims, or counterclaims held or assertable by Siragusa, Rajpal, and/or SR Squared, including but not limited to any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which Siragusa, Rajpal, and/or SR Squared has or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained for enforcement by the Parties as of the Confiramtion Date. It is the intent of Siragusa, Rajpal, and/or SR Squared that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not asserted in this case or disclosed in the Debtor's Schedules and Statements. Siragusa, Rajpal, and/or SR Squared shall have standing and authority to pursue all of his/its respective claims and causes of action.

**7.02**    **Return of Fraudulent Transfers**

Any Creditor determined by the Court to have received a transfer that is voidable pursuant to sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code or any other applicable law shall be required to remit to the Reorganized Debtor the determined amount of the avoided transfer prior to receiving any distribution under this Plan.

---

### Article VIII.  EFFECT OF CONFIRMATION, DISCHARGE, RELEASES AND INJUNCTION

---

**8.01**    **Vesting of Property**

On the Effective Date of the Plan, all property of the Estate shall vest in the Reorganized Debtor pursuant to sections 1141(b) and (c) of the Bankruptcy Code, free and clear of all Claims and interests except as otherwise provided in this Plan.  This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan,

unless such Lien or encumbrance is specifically retained in the Plan. Notwithstanding the above, all creditors shall be granted an in rem interest in the assets of the Reorganized Debtor until such time as creditors' claims are satisfied under the provisions of the Plan regardless of any equitable remedies granted to Wearable Shoe Tree LLC, Box Fresh LLC, or Paul Siragusa by any court.

**8.02** **Plan Creates New Obligations**

Except as otherwise provided in the Plan, (1) the payment terms promised in the Plan constitute new contractual obligations that replace any payment terms that existed prior to the Effective Date, and (2) all rights obligation other than those new payment terms continue to apply.

**8.03** **Legal Binding Effect**

The provisions of this Plan shall: (i) bind all holders of Claims and interests, whether or not they accept this Plan; and (ii) except with respect to Allowed Claims, discharge the Debtor from all Claims, claims, debts, and liabilities, including without limitation, any Claims, claims, debts, and liabilities of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, that arose, or have been asserted against, the Debtor at any time before the entry of the Confirmation Order or that arise from any pre-Confirmation conduct of the Debtor, whether or not the Claims, claims, debts, and liabilities are known or knowable by the Claimant.

**8.04** **Discharge**

As of the Effective Date of this Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, or as reserved in section 7.01 of this Plan, *supra*, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6); or (iii) reserved under section 7.01(b), *supra*

**8.05** **Satisfaction of Claims and Interests**

Except as otherwise provided by the Plan and section 7.01, *supra*, the consideration distributed under the Plan shall be in complete satisfaction of all Claims of any Creditor, including Claims arising prior to the Effective Date.

**8.06** **Temporary Injunction**

Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold, or may hold Claims or Interests against the Debtor, are permanently enjoined on and after the Effective Date as long as the Plan is not in default against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor or any third-party guarantor on account of Claims against the Debtor; (ii) enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any assets or property of same; or (iii) creation, perfection, or enforcement of any encumbrance of any kind against the Debtor

arising from a Claim. Nothing contained herein shall deemed to stay the State Court Lawsuit insofar as the pursuit of the State Court Lawsuit has been authorized by the Bankruptcy Court.

### 8.07 Modification of the Plan

**a.** **Prior to Confirmation.** The Trustee may modify this Plan at any time prior to Confirmation, provided the modification complies with the requirements of sections 1122, 1123 and 1127 of the Bankruptcy Code. Upon the filing of any such modifications with the Bankruptcy Court, the Plan, as modified, becomes the Plan.

**b.** **After Confirmation.** The Trustee may modify the Plan at any time after Confirmation, upon compliance with Bankruptcy Code § 1127. The Trustee or its attorney shall provide notice of any such proposed modification to all Creditors and other parties in interest in these Chapter 11 proceedings. If, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interest of the Creditors, the Bankruptcy Court may modify the Plan without notice to Creditors, or may modify the Plan upon notice only to those Creditors that the Bankruptcy Court deems to be materially and adversely affected.

### 8.08 Retention of Jurisdiction

Except as set forth in the Confirmation Order, the Bankruptcy Court shall retain jurisdiction over this Bankruptcy Case after Confirmation of the Plan to the fullest extent provided for, or allowed, under the Bankruptcy Code and other applicable law. Specifically, but not by way of limitation, and subject to the Confirmation Order, the Bankruptcy Court shall retain jurisdiction for the following purposes:

**a.** to consider and effect any modification of this Plan under Bankruptcy Code § 1127;

**b.** to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

**c.** to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

**d.** to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

**e.** to hear and determine all causes of action;

**f.** to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

**g.**    to make such Orders as are necessary and appropriate to carry out and implement the provisions of this Plan; including to effect the further assurances provided in this Plan;

**h.**    to approve the reasonableness of any payments made or to be made, within the meaning of Bankruptcy Code § 1129(a)(4);

**i.**    to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan;

**j.**    to exercise the jurisdiction granted pursuant to sections 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor; and

**k.**    to determine any and all motions, applications, adversary proceedings and Contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Debtor.

Nothing contained herein shall be construed so as to limit the rights of the Debtor to commence or prosecute any claim in any court of competent jurisdiction.

---

## Article IX.    MISCELLANEOUS PROVISIONS

### 9.01    Request for Relief Under Bankruptcy Code § 1129(b)

In the event any Impaired Class of Claims or Interests shall fail to accept this Plan in accordance with Bankruptcy Code § 1129(a), the Trustee requests that the Bankruptcy Court confirm this Plan in accordance with the provisions of Bankruptcy Code § 1129(b).

### 9.02    Headings

All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

### 9.03    Due Authorization

Each and every Claimant who elects to participate in the distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

---

**9.04    Further Assurances and Authorizations**

The Trustee shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions of, this Plan.

**9.05    Applicable Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

**9.06    No Interest**

Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty, or late charge is to be Allowed on any Claim subsequent to the Petition Date.

**9.07    Post-Confirmation Actions**

After Confirmation, the Reorganized Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan.

**9.08    Notices of Default**

Notwithstanding anything contained herein to the contrary, no Claimant shall have the right to exercise any rights under the Plan or applicable state law unless and until the Trustee fails to cure any default within fourteen (14) days of receipt of written notice of such default to the Trustee and the undersigned counsel.

**9.09    Notices**

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested. Notices provided to the Debtor under this Plan shall be sent to the Debtor at 4950 Keller Springs, Ste 420, Addison, Texas 75001. A copy of all notices provided to the Debtor shall be sent to: (i) the Debtor's attorney, John J. Gitlin, 16901 Park Hill Dr., Dallas, Texas 75248; Tel: (972) 385-8450; Fax: (972) 385-8460; Email: johngitlin@gmail.com; and (ii) the Trustee, Christopher J. Moser, Quilling, Selander, Lownds, Winslett & Moser, P.C., 2001 Bryan Street, Suite 1800, Dallas, Texas 75201; Tel: (214) 880-1805; Fax: (214) 871-2111; Email: cmoser@qslwm.com.

**9.10    Payment Dates**

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day, except as may be provided in negotiable instruments requiring such payments.

**9.11    DeMinimis Distribution**

No single distribution payment of less than $5.00 shall be required to be made to any holder of an Allowed Claim.  Rather, any such deminimis distribution amount shall be held by the Trustee , added to the amount of the next distribution, and remitted to the holder of the Allowed Claim upon reaching a total greater than $5.00.


DATED: May 16, 2019                              Respectfully submitted,


                                                 **CHRISTOPHER J. MOSER, CHAPTER 11 TRUSTEE**

                                                 By:    */s/ Christopher J. Moser*
                                                        Christopher J. Moser


                                                 Presented by:

                                                 **QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
                                                 2001 Bryan Street, Suite 1800
                                                 Dallas, Texas 75201
                                                 (214) 871-2100 (Telephone)
                                                 (214) 871-2111 (Facsimile)

                                                 By:    */s/ John Paul Stanford*
                                                        Christopher J. Moser
                                                        State Bar No. 14572500
                                                        cmoser@qslwm.com (Email)
                                                        John Paul Stanford
                                                        State Bar No. 19037350
                                                        jstanford@qslwm.com (Email)
                                                        S. Kyle Woodard
                                                        State Bar No. 24102661
                                                        kwoodard@qslwm.com (Email)

                                                 **ATTORNEYS FOR CHAPTER 11 TRUSTEE**